365 So.2d 1090 (1979)
SILVER SAND COMPANY OF LEESBURG, INC., Petitioner,
v.
DEPARTMENT OF REVENUE, Respondent.
No. GG-33.
District Court of Appeal of Florida, First District.
January 10, 1979.
Rehearing Denied January 30, 1979.
*1092 Stephen P. Kanar of Fishback, Davis, Dominick & Simonet, Orlando, for petitioner.
Robert L. Shevin, Atty. Gen., Patricia S. Turner, Asst. Atty. Gen., for respondent.
BOYER, Acting Chief Judge.
By way of petition for certiorari, Silver Sand Company of Leesburg, Inc. (Silver Sand) is seeking review of a final order of the Department of Revenue (Department) assessing against Silver Sand a special fuel tax in the amount of $154,644.50.
Silver Sand is in the aggregate business. Diesel fuel is used in its trucking operation and the State imposes a tax of eight cents per gallon on diesel fuel used on the highways. In 1973, fuel was scarce. Silver Sand needed fuel. An individual, one Carruthers, representing Handy Haul-It Truck Rentals, Inc. (Handy Haul-It) told Silver Sand that his company could obtain the needed fuel. Carruthers requested Silver Sand to execute a purchaser's blanket resale and exemption certificate made out to Radiant Oil Company (Radiant Oil), containing Silver Sand's dealer license number. Carruthers obtained the certificate from Silver Sand and gave it to NCJ Investment Company (NCJ), a motor oil distributor. NCJ and Radiant Oil are separate entities. However, Joseph Capitano, the President of NCJ, is the son of the owner of Radiant Oil.
Although the exemption certificate was made out to Radiant Oil, Carruthers delivered it to NCJ and proceeded to purchase 1,753,027 gallons of fuel (tax free) from NCJ. NCJ made the invoices out to Silver Sand and Handy Haul-It paid for the fuel. NCJ did not make inquiry of anyone at Silver Sand as to Handy Haul-It's authority to purchase fuel on Silver Sand's behalf. Only 882,264 gallons of the fuel purchased by Handy Haul-It from NCJ was delivered to Silver Sand: The other was delivered to several other trucking companies. Silver Sand paid Handy Haul-It according to invoices delivered to it by Handy Haul-It. The invoices didn't reflect separate itemizations showing that motor fuel taxes were paid. Carruthers represented to Silver Sand that he would pay the taxes and the price paid for the fuel indicated that the price included the tax. Carruthers, on behalf of Handy Haul-It, never paid the Department any of the special fuel tax. (Carruthers is now incarcerated for his actions in similar cases relating to other persons.)
The Department assessed a tax against Silver Sand for all of the fuel purchased by Handy Haul-It, although Silver Sand only received 882,264 gallons of that fuel. Silver Sand requested and was given a hearing pursuant to F.S. 120.57. After a hearing, the hearing officer issued his findings of fact and recommended order, finding that Handy Haul-It was not a licensed distributor or dealer of motor fuels; that by agreeing to purchase diesel fuel from Handy Haul-It, Silver Sand authorized Handy Haul-It to obtain diesel fuel on behalf of Silver Sand, and therefore Handy Haul-It was Silver Sand's agent for the purpose of obtaining fuel on behalf of Silver Sand; and that Handy Haul-It only had authority to purchase fuel for Silver Sand and when it purchased fuel for purposes other than delivery to Silver Sand, it exceeded the scope of its authority. The hearing officer recommended that the Department reduce the assessment against Silver Sand by the amount of tax due on the fuel not received by Silver Sand. The Department accepted certain portions of the hearing officer's findings of fact, but certain paragraphs of the findings were deleted on the Department's recommendation that the statements *1093 were not findings of fact but conclusions of law. The Department's substituted final order rules that Handy Haul-It had actual authority to buy all the fuel under the tax exempt certificate and similar apparent authority, and assesses against Silver Sand the full amount of the tax.
The State requires a tax on every sale of special fuel used on the highways. This tax must be remitted to the Department by the selling dealer at the time of the first sale or transfer of title unless a dealer purchases the special fuel. If a dealer purchases the special fuel, he then becomes responsible for collecting and paying the tax. The selling dealer must establish the exempt status of the purchasing dealer by obtaining from the purchasing dealer an exemption certificate containing the name, address, and license number of the purchasing dealer and establishing that the special fuel was purchased for resale. If the purchasing dealer uses special fuel for taxable and nontaxable purposes, the purchasing dealer must furnish a resale certificate to the Department covering all purchases and must then remit the special fuel tax to the Department on special fuel used for nonexempt purposes.
The first error alleged by Silver Sand is that in a proceeding under F.S. 120.57, the Department may not change the findings of fact rendered by the hearing officer and call the change a deletion of legal conclusions. Initially, we note that the findings of fact in question rendered by the hearing officer concerned factual matters and not legal conclusions as characterized by the Department. Indeed, certain portions of the hearing officer's findings of fact (which portions the Department characterized as legal conclusions) specifically concern matters which the Department, in a pretrial stipulation, stipulated as issues of fact to be determined by the hearing officer. It was error for the Department to delete the hearing officer's findings of fact and substitute its own findings of fact therefor without stating that the hearing officer's findings were "not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law" as required by Section 120.57(1)(b)(9), Florida Statutes 1975. (Campbell v. State, Department of Transportation, 326 So.2d 66 (Fla. 4th DCA 1976).) The Department may not characterize findings of fact as legal conclusions so that it may avoid the requirements of the statute.
The second error alleged by Silver Sand is that the Department, in its final order, applied a statute and an administrative rule enacted after the subject tax liability was assessed. The record sustains that allegation. That error materially affects the legality of the Department's order.
In its final order, the Department placed the tax liability on Silver Sand based in part on the supposition that since NCJ had a certificate authorizing tax exempt sales, Silver Sand was obligated to pay the tax because Handy Haul-It was not a dealer. In that regard, we quote the following portions of the Department's final order:
"A `dealer' is defined as `any person who holds a valid dealer of special fuel license issued by the Department [Department of Revenue]' and who deals in special fuels in certain specified manners including the purchase of special fuels in bulk quantities for resale to other dealers. Florida Statutes, § 206.86(8). Dealers are permitted to purchase special fuel without paying the tax, even though they are the first purchaser within the state. Florida Statutes, § 206.87(2). Under these circumstances, the purchasing dealer becomes the state's agent for the purpose of collecting and paying the tax. Florida Statutes, § 206.87(2), (3). The Rules of the Department of Revenue imposed upon a selling dealer the responsibility of either collecting the tax, or establishing the exempt status of the transaction. Rule 12A-2.03(1) provides in pertinent part:
`... The exempt status of the transaction must be established by the distributor or dealer. Unless the distributor or dealer has obtained from the purchaser a resale or exemption certificate, the sales invoice, with respect *1094 to any sale for which exemption is claimed, must show the exempt purpose for which the special fuel was not placed into the receptacle connected to the fuel supply system of a motor vehicle. Any dealer of special fuel . . who obtains from his purchaser a resale or exemption certificate and, in good faith, sells special fuel to such purchaser tax free shall not be required to collect from the purchaser any tax levied by Chapter 206 ...'
"A purchasing dealer is required to deliver a resale certificate to the selling dealer. Otherwise, the selling dealer is required to collect the tax."
The Department concluded that Handy Haul-It was not a dealer because it did not hold a special fuel license issued by the Department of Revenue as required by Section 206.86(8), Florida Statutes 1975. That statute defines a dealer as "any person who holds a valid dealer or special fuels license issued by the [Department of Revenue] ...". Therefore the Department reasoned that Silver Sand became the purchasing dealer and the state's agent for the purpose of collecting and paying the tax. According to the Department, Handy Haul-It was merely the agent of Silver Sand, possessing the apparent and actual authority to act for Silver Sand. However, the events leading to the tax liability in this case occurred between April and December, 1973. Under the definition contained in Section 206.86(8), Florida Statutes 1973, there is no requirement that a dealer have a license issued from the Department.
Also, in the final order, the Department, citing Department of Revenue Rule 12A-203(1), found that NCJ had no tax liability since a dealer who obtains from a purchaser a resale exemption certificate and in good faith sells special fuel to such purchaser tax free cannot be required to collect from the purchaser any tax levied by Chapter 206. However, that rule went into effect in April, 1976. The rule as it existed in 1973 provided:
"Unless the distributor or dealer shall have taken from the purchaser a certificate to the effect that the motor fuel or special fuel was purchased for resale and bears the name and address of the purchaser and the number of his distributor or dealer's license, the sale shall be deemed taxable."
Silver Sand contends that the proper application of the 1973 law results in the conclusion that Handy Haul-It was a dealer. Pursuant to Section 206.87(1) and (2), Florida Statutes 1973, and the applicable regulations, if the selling dealer established the tax exempt status of the sale by obtaining from the purchaser a resale exemption certificate, then the dealer who purchased the special fuel without the tax imposed was required to pay the tax on the special fuel used or sold by him and to act as the agent of the State for the collection and payment of the tax. Therefore, Silver Sand contends that the tax liability should have been placed on the dealer who purchased the fuel, Handy Haul-It, because Handy Haul-It was a dealer under the 1973 Statute. Alternatively, Silver Sand contends that the proper application of the 1973 regulation requires the selling dealer (NCJ) to have a certificate addressed to it or the transaction will lose its tax exempt status. Since the hearing officer found that NCJ did not have a certificate of bulk resale addressed to it, Silver Sand contends that NCJ was responsible for paying the tax.
The Department argues that the application of the wrong statute was not material, but it does not, under its discussion of this point, show how application of the 1973 statute results in tax liability on Silver Sand. The Department admits that it cited a 1976 Revenue Rule but contends that the Rule effective during 1973 was not as stringent as the 1976 rule since the prior rule did not require a good faith sale, but only the acceptance of a certificate containing the purchaser's special fuel tax exempt number. We are not persuaded by the Department's argument. First, and most important, the exemption certificate was not addressed to NCJ but to Radiant Oil. It is an implausible conclusion that NCJ, even in good faith, could have relied upon the exemption certificate *1095 when the exemption certificate was made out to Radiant Oil and in fact contained the name, address and dealer license number of Silver Sand and no information pertinent to the dealer, Handy Haul-It, who actually purchased the fuel.
In its third point, Silver Sand contends the Department erred when it charged Silver Sand a tax on special fuel which Silver Sand did not receive.
The hearing officer found that Handy Haul-It was without actual authority to purchase the fuel under Silver Sand's tax exemption certificate to sell to others. He found that NCJ had no right to rely upon the tax exempt certificate and the statements by Carruthers of Handy Haul-It as to the extent of his authority, but instead should have made inquiry of Silver Sand or should have sent copies of the invoices to Silver Sand or otherwise done something to determine the extent of the authority of Carruthers and Handy Haul-It. However, the Department deleted those findings and concluded that the facts show Handy Haul-It was the agent of Silver Sand possessing the actual and apparent authority to buy fuel using Silver Sand's exemption certificate and to sell that fuel to others and that NCJ had the right to rely upon the certificate given to it by Handy Haul-It. The Department made those conclusions, even though the certificate was made out to Radiant Oil and not to NCJ, sales of 2,000,000 gallons of fuel took place without notification to Silver Sand, bad checks were received from Handy Haul-It and were not charged to Silver Sand but rather to Handy Haul-It, and even though NCJ did not fill out its sales invoices in accordance with the requirement of the administrative regulations (the regulations require that NCJ put the tax exempt number on the invoices). We agree with Silver Sand that nothing in Florida law justifies the result reached by the Department.
In support of its contention that NCJ justifiably relied on the tax exemption certificate signed by Silver Sand and is relieved from the tax liability, the Department cited Motorola, Inc. v. Green, 130 So.2d 65 (Fla. 1961) which states:
"* * * if a dealer is delivered a resale certificate properly identified by the Comptroller's registration number, and he receives it in good faith, he can proceed to deal with the purchaser. He can assume that he has thereby been excused from what otherwise might be a responsibility to collect the tax. * * * We have the view that in so doing he can safely rely on the Comptroller's designation of the purchaser who executes such a certificate as the one authorized to collect the tax for the State." (130 So.2d at page 68.)
However, that case is distinguishable. In the Motorola case, the dealer to whom Motorola sold the advertising material was the dealer who provided Motorola with its resale certificate. In this case, the resale exemption certificate was made out to Radiant Oil and executed by Silver Sand, who was not the purchasing dealer. Handy Haul-It was the purchasing dealer.
We are not persuaded that Handy Haul-It acted as Silver Sand's agent with either actual or apparent authority to buy fuel using Silver Sand's exemption certificate and sell it to others under the principles of agency announced in Taco Bell of California v. Zappone, 324 So.2d 121 (Fla. 2nd DCA 1976). There is no evidence in this case that Handy Haul-It had the actual authority to purchase the fuel under Silver Sand's tax exemption certificate and sell it to others. Nor is there any evidence that Handy Haul-It had the apparent authority to purchase the fuel which was delivered to the several other trucking companies since Silver Sand never allowed or caused others to believe that Handy Haul-It had such authority nor did Silver Sand hold Handy Haul-It out as possessing that authority.
As its fourth and final points, Silver Sand contends that it cannot be charged a second time for a tax which it has already paid on fuel received. Concerning this point we quote the following portions of the hearing officer's findings of fact and conclusions of law:

*1096 "882,264 gallons of the special fuel purchased by Handy Haul-It from NCJ was delivered to Silver Sand. This fuel was delivered either in Handy Haul-It's own truck, or in a truck hired by Handy Haul-It. Silver Sand paid Handy Haul-It directly by check when it received each of the deliveries. Handy Haul-It delivered invoices to Silver Sand. The invoices do not reflect a separate itemization showing that motor fuel taxes were paid. The price paid for the fuel would indicate that the price included the tax. Carruthers represented to officials at Silver Sand that the price included the tax, and that he would pay the taxes.
* * * * * *
"5. * * * The law permits a purchaser such as Silver Sand to assure itself that the taxes are included in the price by demanding that the amount of taxes be separately stated on all invoices as is required by Florida Statutes § 206.49. Silver Sand took no steps to assure itself of Handy Haul-It's, or Carruthers' veracity or status. Silver Sand was not justified in relying upon Carruthers' statements that the price included taxes because it took no steps to assure itself as to Carruthers and Handy Haul-It's status, and because the easy remedy set out in § 206.49 was not utilized.
"6. Silver Sand is liable for special fuel taxes on 882,264 gallons of special fuel which it impliedly authorized Handy Haul-It to obtain on its behalf, and which it purchased from Handy Haul-It. Silver Sand is not responsible for the special fuel tax on fuel purchased by Handy Haul-It from NCJ which Handy Haul-It did not deliver to Silver Sand. Handy Haul-It did not have the real authority to make such purchases, and Silver Sand gave Handy Haul-It only the apparent authority to make such purchases from Radiant Oil Company, not from NCJ."
We must disagree with the hearing officer that the evidence sustains a finding that Handy Haul-It was impliedly authorized to obtain the 882,264 gallons of special fuel on Silver Sand's behalf. Silver Sand only authorized Handy Haul-It to purchase fuel from Radiant Oil not NCJ.
In any event, the hearing officer did find that Silver Sand paid the tax. F.S. 206.23, 206.49 and 206.87(3) do require that an invoice for sale of special fuel state the special fuel tax as a separate item on the invoice. Those statutes state as follows:
"206.23 Tax; must be stated separately.  Distributors shall add the amount of the gas tax to the price of the motor fuel sold by them and shall state the rate of the tax separately from the price of the motor fuel on all invoices. However, this section shall not apply to retail sales by a retail service station."
"206.49 Invoice to show whether or not tax paid.  Each distributor, when selling to any other distributor any of the products taxed under this part, shall render an invoice of such sale to the purchaser, and upon such invoice the distributor rendering such invoice shall plainly state thereon whether or not the tax required will be reported and paid by him, and the purchaser buying and receiving such products may fully rely upon the statement made in such invoice."
"206.87(3) Upon payment or lawful assumption of the tax by the dealer, the amount of tax paid or assumed shall be added to the sale price of the product sold, and the amount of the tax shall be stated separately from the price of the product on all price display slips, bills, or statements which indicate the price of the product. The delivery of the product sold shall be deemed to be made at the point of destination." (Florida Statutes 1973)
None of the statutes state what the effect will be if the tax is not separately stated. In fact, under the Statutes, it is the dealer (in this case, Handy Haul-It) who was responsible for separately stating the tax on the invoice. The statutes do not make it Silver Sand's responsibility to separately state the tax before it pays for the special fuel nor do the statutes say that the tax must be separately stated before the fuel is paid for nor that Silver Sand will be required to pay the tax a second time if the *1097 tax is not separately stated on the invoice. We agree with petitioner that the purpose of requiring that the tax be separately stated is for the protection of the purchaser so that the purchaser may prove that he has paid the tax. However, we also agree that separately stating the tax on the amount of the invoice is not the sole means of establishing that a purchaser has paid the tax. Since Silver Sand proved that it paid the tax, we hold that the tax cannot be imposed upon it again even though the tax was not separately stated on the invoice.
Petitioner filed a motion for attorney's fees pursuant to F.S. 120.57(1)(b)(9). Each case coming before an appellate court of Florida is required to be considered by a panel of three judges and the concurrence of two is necessary to a decision. (See Article V, Section 4(a) of the Constitution of the State of Florida) Cases are conferenced among the judges comprising the panel before an opinion is prepared. (See Boyer, Appellate Mystique, Vol. 51, No. 8, The Florida Bar Journal, October 1977) So it is that prior to release of an opinion for publication each judge of the panel is acquainted with the views of the others on each issue involved in the case. As to the issue relating to attorney's fees sub judice, the author of this opinion is of the view that they are appropriate and should be granted; but the other two judges, comprising a majority, are of the view that the motion for fees should be denied.
Accordingly, certiorari is granted and the order here reviewed is reversed. Petitioner's motion for attorney's fees is denied.
MILLS, J., concurs.
ERVIN, J., dissents.
ERVIN, Judge, dissenting.
I respectfully dissent and would affirm DOR's order imposing the special fuel tax assessment. It is clear the hearing officer's recommended order contained legal conclusions in the treatment of the facts which were properly treated as conclusions of law in the Department's final order. The recommended order included the following findings: (1) Handy Haul-It was Silver Sand's agent for the purpose of purchasing fuel for Silver Sand; (2) Handy Haul-It had neither actual nor apparent authority to purchase fuel for purposes other than sale to Silver Sand; (3) NCJ Investment Company was not entitled to rely on the exemption certificate since it was back dated and addressed to Radiant Oil; (4) NCJ should have contacted Silver Sand instead of relying on Handy Haul-It to correctly represent its authority. Clearly, DOR took what were legal conclusions, interpreted the legal significance of the same factual background and concluded that NCJ could rely on the exemption certificate and that Handy Haul-It had apparent and actual authority to purchase all of the fuel. Findings regarding the extent of an agency relationship are not findings of fact.
It is true the hearing officer and DOR erroneously applied the wrong statutes and regulations to this case. I agree, however, with DOR that the error was not material. The majority finds a material difference between the statutes of 1973 and 1975 since the definition of "dealer" in the earlier, applicable statute does not require that dealers have a license issued by the Department of Revenue. The majority concludes that Handy Haul-It is a dealer and responsible for the special fuel taxes (notwithstanding that Handy Haul-It was obviously aware it could not obtain the fuel tax-free without an exemption certificate bearing a dealer's license number). I disagree strongly that the legislature manifested an intent in 1973 that anyone act as a dealer who was not licensed. For example, § 206.89(1), Fla. Stat. (1973), states: "No person shall act as a dealer unless he holds a valid dealer's license issued by the department." Additionally, § 206.86(9), Fla. Stat. (1973), as does the definition under the 1975 statute, defines duly licensed dealer as "any dealer holding a valid license issued by the department." Ch. 206, Fla. Stat. (1973), does not, other than in the definition, make any distinction between "dealer" and "duly authorized dealer." Thus it would appear that in both the 1973 and 1975 statutes it was intended that "dealer" be synonymous with "licensed dealer."
*1098 Similarly, there is no material difference between the regulation applicable to this cause and that adopted subsequently and cited by DOR in its final order. Both establish that a selling distributor must have an exemption certificate before it can sell fuel free from tax liability. As DOR argues, the newer regulation may be construed more strictly against the distributor since it states the distributor must obtain the exemption certificate and "in good faith" sell to his purchaser. The Department's interpretation of the regulation is within its range of discretion, and we are not allowed to substitute our interpretation under the circumstances. Section 120.68(12).