462 So.2d 83 (1985)
COLLIER MEDICAL CENTER, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee, and
Naples Community Hospital, Inc., Fort Myers Community Hospital, and Lee Memorial Hospital, Appellees/Intervenors.
No. AV-172.
District Court of Appeal of Florida, First District.
January 8, 1985.
Rehearing Denied January 31, 1985.
*84 Fred W. Baggett and Michael J. Cherniga, Roberts, Baggett, LaFace, Richard & Wiser, Tallahassee, for appellant.
Theodore E. Mack, Tallahassee, for appellee, Dept. of Health and Rehabilitative Services.
Kenneth F. Hoffman, Oertel & Hoffman, P.A., Tallahassee, for appellee, intervenor Naples Community Hosp., Inc.
David W. Mernitz, Stark, Doninger, Mernitz, West & Smith, Indianapolis, Ind., and E.G. Boone and Susan Lee Stockham, E.G. Boone, P.A., Venice, for appellee, intervenor Fort Myers Community Hosp.
Robert C. McCurdy, Fort Myers, for appellee, intervenor Lee Memorial Hosp.
SMITH, Judge.
Collier Medical Center ("CMC") appeals from a final order of appellee Department of Health and Rehabilitative Services ("HRS") adopting the proposed order of a Department of Administrative Hearings hearing officer which recommended denial of CMC's application for a certificate of need ("CON"). CMC challenges a number of the findings of fact and conclusions of law of the hearing officer. We affirm.
CMC's CON application proposed the construction of a 100-bed, acute care, for-profit hospital near Naples, in north Collier County, Florida, to provide various medical, surgical and emergency room services. Obstetrics and other specialty services would not be offered; and although CMC envisioned the occasional admission of children, no pediatrics ward, per se, would exist. CMC defined its proposed service area as all of Collier County, as well as the Bonita Springs census division of southern Lee County.
Appellees, Naples Community Hospital ("NCH"), Lee Memorial Hospital ("LMH"), and Ft. Myers Community Hospital ("FMCH"), were allowed to intervene in the proceedings below in support of HRS' preliminary denial of CMC's application. NCH, the only hospital located in Collier County at the time of CMC's certificate of need application, is a 400-bed non-profit acute care facility. LMH is a 558-bed public hospital located in Ft. Myers, Lee County. FMCH is a 400-bed private for-profit hospital also located in Ft. Myers. FMCH stipulated that, if built, CMC would have no adverse financial impact on FMCH's patient case load or operating expenses. However, FMCH did contend that CMC's emergency room facilities would have an adverse effect on FMCH's primary care center emergency room in Bonita Springs.
After a hearing, the hearing officer found that the evidence failed to show the need for an increase of 100 hospital beds in Lee or Collier Counties, either separately or together; and that CMC's application failed to come within the applicable CON guidelines regarding special equipment and services, affiliation with a health maintenance organization, or inclusion of research or educational facilities. Rather, the hearing officer found that CMC would provide negligible health care benefits because its rooms would be private only and because it would not offer obstetric or pediatric services. Further, CMC's proposed hospital would result in the diversion of revenues from NCH and LMH, both of which have large charity case loads, hence exacerbating their difficulty in the continued provision of these services. Accordingly, the hearing officer recommended that HRS deny CMC's application.
All parties agree that the appropriate criteria for reviewing CON applications are found at Section 381.494(6)(c) and (d), Florida Statutes (1982), and Rule 10-5.11, Florida Administrative Code. The parties also agree that the appropriate weight to be given to each individual criterion is not fixed, but rather must vary on a case-by-case basis, depending upon the facts of each case. Brown v. Department of Health and Rehabilitative Services, 4 FALR 2452-A (October 6, 1982). Finally, it is undisputed that we are guided by Section 381.494(8)(e), Florida Statutes (1982), which provides that this court must affirm a decision of HRS regarding issuance of a certificate of need unless the decision can be said *85 to be arbitrary, capricious, or not in compliance with the statute. Based on the above standards, we find the factual and legal analysis of the hearing officer, as adopted by HRS, to be permissible, hence irreversible.
CMC launches a general attack on a number of the findings of fact and conclusions of law made by the hearing officer, including those findings and conclusions relating to need, substantial revenue loss to NCH and LMH, unnecessary duplication, and financial feasibility. CMC then concludes by contending that competent, substantial evidence exists in the record below showing that it met the statutory criteria. However, the question before this court is not whether, as CMC suggests, the record contains competent, substantial evidence supporting its view. Rather, the question is whether competent, substantial evidence supports the findings made by the hearing officer below. If so, this court must affirm the final agency action adopting the hearing officer's order. Section 120.68(10), Florida Statutes (1981). This court is not empowered to reweigh the evidence. Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108 (Fla. 1st DCA 1977).
We find it unnecessary to summarize the evidence, or recite each and every factual issue resolved by the hearing officer. The order complies with the essential requirements of law as to form and content. Appellant simply maintains that the findings and conclusions are erroneous. It is clear, however, that the hearing officer properly weighed and considered the evidence. For example, the hearing officer rejected the testimony of CMC's expert, and accepted the testimony of NCH's expert, that, based on projected bed occupancy rates in Lee and Collier Counties in 1986, the current existing and projected number of beds was sufficient to meet the bed-use needs of CMC's proposed service area. It is clear that the decision regarding which expert's testimony should be accepted resides in the hearing officer, and hence HRS, rather than with this court. Florida Chapter of Sierra Club v. Orlando Utilities Commission, 436 So.2d 383, 389 (Fla. 5th DCA 1983). Similarly, the testimony of the chief financial officers of LMH and NCH provides competent, substantial evidence supporting the hearing officer's finding that each of these facilities would suffer significant revenue losses as a result of the loss to CMC of a percentage of their paying patients, with an accompanying retention of non-paying patients. Furthermore, the testimony of HRS's expert witness provides competent, substantial evidence to support the hearing officer's finding that primary care centers such as Bonita Springs would provide a less costly alternative to CMC's proposed emergency room facilities, and that CMC's facilities would be a needless duplication of already existing services. Finally, the evidence supports the hearing officer's finding that CMC would not be financially feasible because of the resultant duplication of services and increased costs to other area hospitals attributable to CMC's siphoningoff of paying patients from these facilities without an accompanying shouldering by CMC of the area's indigent care burden. See Section 381.493(2), Florida Statutes (1982).[1]
CMC raises two other issues which it claims mandate reversal of HRS's final order below. However, neither has merit. First, CMC contends that the hearing officer erred in finding that the intervenors NCH, LMH, and FMCH had standing to intervene in this cause. CMC notes that Section 120.52(10)(b), Florida Statutes (1981), grants standing in administrative hearings such as conducted below to anyone whose "substantial interests" are affected by the proposed agency action. CMC notes that the asserted interests of all *86 of the intervenors are economic. CMC cites Leesburg Regional Medical Center v. Department of Health and Rehabilitative Services, 5 FALR 1583-A (June 15, 1983), for the proposition that economic interests are not within the "zone of interests" protected by Section 120.52(10)(b) and Section 381.494, Florida Statutes (1982). Leesburg, however, is distinguishable from the case at bar in that in Leesburg, the applicant merely sought to modernize its existing facility, rather than, as here, create a new facility. See also, Hospital Corporation of America v. Department of Health and Rehabilitative Services, 5 FALR 961-A (April 1, 1983) (appellant lacks standing because the number of licensed beds was unchanged by the internal redistribution of beds by the certificate of need applicant). Here, the effect of the proposed CMC facility on the continued financial feasibility of the intervenors is a recognized interest under Florida certificate of need law. Tarpon Springs General Hospital v. Office of Community Medical Facilities, Department of Health and Rehabilitative Services, 366 So.2d 185 (Fla. 1st DCA 1979); Biomedical Applications v. Department of Health and Rehabilitative Services, Office of Community Medical Facilities, 370 So.2d 19 (Fla. 2d DCA 1979), Medfield Corporation, d/b/a Seven Rivers Community Hospital v. Department of Health and Rehabilitative Services, 5 FALR 1955-A (August 1, 1983).
Finally, CMC contends the hearing officer erred in denying its request for official recognition of facts and its alternative motion to supplement the record. This motion, filed approximately four months after the hearing below was closed, requested that the hearing officer take official recognition of the fact that on May 16, 1983, subsequent to the hearing below, HRS received three separate letters of intent from NCH to construct two 50-bed satellite hospitals to be located in northern Collier County and Marco Island, respectively, as well as to add 50 acute care beds to NCH. CMC contends that these letters of intent indicate that the intent of the intervenors in challenging CMC's application for a CON was to protect their own "monopoly" over medical services in CMC's proposed service area. However, we hold that the hearing officer did not err in refusing admission of these letters of intent. As correctly pointed out by the appellees, letters of intent are filed only to enable a party to later make an application within future batching cycles, Section 381.494(5), Florida Statutes (1982). CMC has not shown that the letters of intent filed by NCH would be applicable to 1986 or shortly thereafter, the dates in question for CMC's application. Moreover, this court has previously noted that to allow a party to produce additional evidence after the conclusion of an administrative hearing below would set in motion a never-ending process of confrontation and cross-examination, rebuttal and surrebuttal evidence, a result not contemplated by the Administrative Procedures Act. Florida Department of Transportation v. J.W.C. Company, Inc., 396 So.2d 778, 784 (Fla. 1st DCA 1981).
Accordingly, the order appealed from below is AFFIRMED.
MILLS and NIMMONS, JJ., concur.
NOTES
[1] We have noted and find without merit appellant's assertion that denial of the application was based on HRS's utilization of a non-rule policy of "exclusive reliance" on the out-dated 1982 "Health System Plan" published by the former South Central Florida Health Systems Council, Inc.