SMITH, Judge.
Appellant Charter Medical-Southeast, Inc. (Charter) appeals from an order of appellee Department of Health and Rehabilitative Services (HRS) denying Charter’s application for a certificate of need (CON). Charter contends that HRS erred in concluding that Charter’s application failed to meet the requirements of section 381.-494(6)(c)l, Florida Statutes (1983) and rule 10-5.11(25), (27), Florida Administrative Code. During the pendency of this appeal, appellee Manatee Memorial Hospital (Manatee Memorial) has filed a motion to dismiss Charter’s appeal as either moot or a “sham,” based upon a settlement agreement entered into by Charter, HRS, and appellee Manatee Mental Health Center, Inc. (MMHC). We deny the motion to dismiss, and affirm the order appealed from in its entirety.
In November of 1982, Charter filed an application with HRS for a CON to construct a 52-bed psychiatric hospital in Bra-denton, Florida. Prior to an administrative hearing on Charter’s application, HRS granted motions to intervene by appellees MMHC and Manatee Memorial. At the time of the proceedings below, Manatee Memorial was a not-for-profit general acute care hospital which operated a 25-bed psychiatric unit. Manatee Memorial was housing 37 patients in this psychiatric unit on the date of the hearing. MMHC was a not-for-profit corporation providing a variety of psychiatric and other mental health services in a 37-bed facility. Charter, on the other hand, was a planned for-profit hospital.
The service area proposed by Charter in its CON application, northern Manatee County and southern Hillsborough County, represented a portion of HRS Service District VI, which included Manatee, Hillsbor-ough, Polk, Hardee, and Highland Counties. According to HRS rules 10-5.-ll(25)(d)(3), (27)(f)l, a CON application for new short-term psychiatric and substance abuse beds will not be approved unless need is demonstrated under the rule’s bed need ratios of .35 and .06 beds per 1,000 population within the service district, respectively. Under these formulas, there existed a need in District VI at the time of Charter’s application for 496 short-term psychiatric beds and 84 substance abuse beds. According to testimony presented by Manatee Memorial, District VI contained 656 short-term psychiatric beds and 94 substance abuse beds, either licensed or approved. Thus, a surplus of both types of beds existed district-wide, a state of affairs acknowledged by Charter.
Charter’s argument below was that under rule 10-5.11 a finding of no numerical need based upon the bed need ratios was not dispositive in weighing the merits of Charter’s CON application; instead, the rule provided an alternative basis for finding need where less than 90% of the service area’s population lived within 45 minutes driving time of short-term psychiatric services, the so-called “access standard,” Rule 10-5.11(25)(e)7. Charter presented testimony indicating that the majority of short-term psychiatric and substance abuse beds identified by HRS and intervenors were located in the metropolitan Tampa Bay — St. Petersburg area, and that these facilities were not located within 45 minutes’ driving time of the service area identified by Charter in its CON application, southern Hills-borough and northern Manatee Counties.
On this issue, Charter offered the testimony of Gary Silvers, Executive Director of the West Central Florida Health Council, covering Pasco and Pinellas Counties. Sil *761 vers testified that, according to the West-Central Florida health plan, there was a need in the service area identified by Charter for 41 short-term psychiatric and 11 substance abuse beds. Silvers testified that the surplus beds identified by HRS for all of District VI were located mostly in Hillsborough County, and hence were inaccessible for the majority of Manatee County residents. Silvers’ testimony was echoed by Howard Fagan, a health planning expert from Atlanta, who testified that Charter’s CON proposal was in conformity with the state health plan for HRS Service District VI. Appellees countered Charter’s evidence regarding need based upon the “access standard” by offering the testimony of Gene Nelson, an HRS health planning official, who testified that more than 90% of the population of District VI had access within 45 minutes driving time to short-term psychiatric and substance abuse beds found in facilities located in HRS Service District VIII; specifically, in Sarasota. Nelson testified that located in Sarasota were 136 short-term psychiatric and 33 substance abuse beds; he also testified that the occupancy rate for these beds was below the rate required for approval of the construction of new facilities. According to Nelson, HRS interpreted its “access standard” rule as capable of satisfaction by reference to facilities located in adjacent HRS service districts.
The hearing officer’s recommended order found that Charter had failed to prove need for its proposed facility based on the bed-need ratios found in rule 10-5.11, Florida Administrative Code. On the other hand, the hearing officer did find that patients within the service area identified by Charter did not have access, under rule 10-5.-ll(25)(e)7, to sufficient numbers of short-term psychiatric and substance abuse beds within District VI. Nonetheless, he concluded that facilities accessible to District VI patients under the rule existed in an adjacent service district, District VIII (Sarasota). The hearing officer also concluded that HRS’ interpretation of this access standard as allowing consideration of the accessibility of service facilities in adjacent health districts was a permissible one. Accordingly, he recommended that Charter’s CON application be denied.
In its final order in this cause, HRS deleted the hearing officer’s finding of fact that bed-need calculations for Health Service District VIII (Sarasota) were not based upon forecasted use by District VI patients and, thus, that an influx of District VI patients would have a “tangible impact” on District VIII facilities. HRS characterized this finding as a conclusion of law, and found that, as a matter of fact, HRS did consider the use of facilities in one health service district by patients from adjacent districts in reviewing bed-needs for each district. HRS adopted the remainder of the hearing officer’s findings of fact, and adopted his conclusions of law in toto. Accordingly, HRS denied Charter the CON it sought.
The order denying Charter’s CON application was issued by HRS on December 27, 1984. However, on January 23,1985, Charter, HRS, and MMHC entered into a settlement agreement concerning both Charter’s CON application as well as a pending CON application by MMHC. Under the agreement, Charter was granted a CON to construct a 50-bed short-term psychiatric facility, and MMHC was granted a CON to construct a facility containing 20 short-term psychiatric beds and 7 short-term substance abuse beds. The agreement also provided that Charter, HRS, and MMHC would agree to “cooperate fully in the defense of [the] agreement and the CONs.” Specifically, MMHC agreed to file an appellate brief supporting the need for the Charter's CON application originally denied by HRS. Furthermore, the parties to the settlement agreement agreed that the various terms of the agreement would not be sever-able, and that any administrative or judicial challenge to the agreement would be considered a challenge to the whole agreement, as well as to both CONs. Five days after execution of this agreement, on January 28, 1985, Charter filed its notice of appeal concerning HRS’ December 27, 1984, denial of Charter’s CON application.
*762 Initially, we must examine Manatee Memorial’s contention that acceptance of the settlement agreement by the remaining parties to this appeal requires dismissal of this appeal as either moot or a sham. As to the former, Manatee Memorial claims that the practical result of the settlement agreement was to grant Charter the precise remedy it seeks in this court; namely, a CON to construct a short-term psychiatric facility in Bradenton. Moreover, according to Manatee Memorial, the requirement contained in the settlement agreement that HRS and MMHC file briefs supporting Charter’s position in this court renders Charter’s appeal collusive as to those parties. Finally, Manatee Memorial contends, acceptance by Charter of the settlement agreement rendered the December 27, 1984 order issued by HRS non-final for purposes of this appeal.
.We find Manatee Memorial’s arguments on this issue to be without merit. For one thing, the order appealed from is clearly “final” in the statutory sense, since it met the definition of finality on its face: “ ... [a]gency decisions shall be final when reduced to writing and filed with the person designated by the agency as clerk ...,” Section 120.52(10), Florida Statutes (1983).[1] Furthermore, Manatee Memorial’s contention that no practical result can be obtained from this appeal rests on the erroneous assumption that the issues raised in both this appeal and any challenge to the settlement agreement would be the same. However, the “merits” of Charter’s CON application would not be the only issue that could be raised in an attack on the settlement agreement. Rather, such a challenge could also include questions as to the legality of the procedure of entering into such agreements, as compared to issuing CONs through the administrative apparatus.[2] Our view on this issue was indirectly affirmed by the refusal of Manatee Memorial’s counsel to stipulate at oral argument that Charter would be free to argue the merits of its CON application in the administrative proceedings (and any subsequent appeal to this court) concerning a challenge to the validity of the settlement agreement. Finally, we discern no lack of adversarialness in this appeal; on the contrary, Manatee Memorial itself has vigorously and ably presented arguments favoring affirmance of HRS’ December 27,1984 order. Accordingly, we deny the motion to dismiss this appeal.
Turning to the merits of Charter’s CON application, we find no reversible error in the proceedings below. Charter first argues that, although its application does not meet the bed-need criterion of Rule 10-5.11, it does meet other statutory and rule criteria, citing Department of Health and Rehabilitative Services v. Johnson & Johnson Home Health Care, Inc., 447 So.2d 361 (Fla. 1st DCA 1984) (numerical bed-need methodology not dispositive of CON application) and Collier Medical Center, Inc. v. State, Department of Health and Rehabilitative Services, 462 So.2d 83 (Fla. 1st DCA 1985) (weight given to each statutory criterion not fixed, but instead varies on case-by-case basis). In support *763 of this argument, Charter cites the hearing officer’s findings of fact concerning statutory and rule criteria relating to occupancy and lack of access. For example, the hearing officer found that the only psychiatric unit in Manatee County, the Manatee Memorial Mental Health Unit, contained 37 patients in a unit designed for 25 patients. Similarly, the hearing officer found that the number of surplus beds in District VI was deceptive on the issue of bed-need, since the majority of these surplus beds were located in the Tampa-St. Petersburg area, and hence did not meet the access standard portion of HRS’ rules. Finally, the hearing officer found that Charter’s application met the criteria found in Rule 10-5.11(25)(e)l that the proposed facility be consistent with the needs of the local community as stated in the local health plan. In sum, Charter maintains, a balanced consideration of all statutory and rule criterion clearly established that Charter should have been granted its requested CON. Charter also argued that HRS is limited by both statute and its own previous decisions interpreting the access standard to a consideration of the service district proposed by the CON applicant in deciding whether or not the access requirement of Rule 10-5.11 has been met.[3]
We agree, however, with Manatee Memorial that, since the evidence was clear that there was a surplus of short-term psychiatric and substance abuse beds in District VI, HRS properly denied Charter’s CON application as contrary to the statewide health plan. Gulf Court Nursing Center v. HRS. 483 So.2d 700 (Fla. 1st DCA 1985). On the other hand, the question of whether Charter’s application met alternative statutory need criteria depends upon the correctness of HRS’ consideration of non-District VI facilities addressing the access standard of rule 10-5.11(25)(e)7. Since the testimony of Gene Nelson provides competent, substantial evidence from which the hearing officer could have found that HRS properly interpreted the rule as allowing consideration of facilities in contiguous districts, we affirm the conclusions of the hearing officer and HRS that Charter was not entitled to issuance of a certificate of need based on Rule 10-5.11.[4] This result is not changed by Charter’s statutory and administrative precedent argument, see footnote 3, supra, since none of the cases relied upon involved the precise point before us.[5] We note also that while Charter’s argument is couched in “equal protection” terms, no constitutional issue has been adequately framed and briefed as a point on appeal for resolution by this court.
Charter next contends that HRS erroneously deleted a finding of fact made by the hearing officer with respect to the impact on District VIII facilities of use of these facilities by District VI patients. Charter suggests that competent, substantial evidence supports the deleted finding, and thus that HRS is precluded from rejecting the finding, either by substitution of its own factual findings, section 120.-57(1)(b)9, Florida Statutes (1983), or by improperly characterizing the finding as a conclusion of law, Silver Sand Company of Leesburg, Inc. v. Department of Revenue, 365 So.2d 1090 (Fla. 1st DCA 1979).
We find no merit to this contention. The uncontradicted testimony of Gene Nelson indicated that HRS was required by both the state health plan and its own rules to apply the fixed bed-need ratios based upon an assumption that patients from one ser *764 vice district may utilize services in other districts. In such circumstances, we believe HRS was entitled to delete the challenged finding of fact, as it was based upon a conclusion (that the bed-need ratios were not predicated upon an assumption of cross-district use) that was in conflict with stated HRS policy. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
Finally, we reject as frivolous Charter’s contention that Manatee Memorial lacked standing to intervene in the administrative proceedings below, since Manatee Memorial’s comptroller testified without contradiction that construction of the facility sought by Charter would result in $1.6 million of lost revenue to Manatee Memorial. See Collier Medical Center v. State, Department of Health and Rehabilitative Services, 462 So.2d 83 (Fla. 1st DCA 1985).[6]
Accordingly, the order appealed from is
AFFIRMED.
WENTWORTH, J., concurs.
BOOTH, C.J., dissents with written opinion.

. Nor is this result changed by Mantee Memorial’s citation to the rule that administrative agencies such as HRS retain the inherent power to reconsider or amend "final” orders still under their control, see e.g. Peoples Gas System, Inc. v. Mason, 187 So.2d 335 (Fla.1966); Reddy Creek Utilities v. Florida Public Service Commission, 418 So.2d 249 (Fla.1982). The settlement agreement at issue here did not purport to reflect a "modification” by HRS of its December 27, 1984 order. Instead, the agreement as it related to HRS and Charter is analogous to a second CON application by Charter that is accepted by HRS, since Charter’s legal entitlement to the CON is not affected by the fact that it was secured through a settlement agreement rather than through formal administrative proceedings, Florida Convalescent Centers, Inc. v. HRS, 445 So.2d 631 (Fla. 1st DCA 1984).

. As a matter of fact, Manatee Memorial’s challenge to the settlement agreement below raised precisely this issue; a later pleading filed by Manatee Memorial prior to oral argument indicates that both the hearing officer and HRS struck down the agreement as an invalid attempt to deny affected parties access to administrative challenges to CON applications. An appeal from HRS' final order in that case is pending before this court as Charter Medical-Southeast, Inc., d/b/a Charter Haven Hospital v. HRS, Case No. BL-56.

. See Section 381.494(6)(c)2 requiring HRS to consider accessibility "... in the service district of the applicant.” See also Charter Woods, Inc. v. Department of Health and Rehabilitative Services, 7 F.A.L.R. 1375, 1382 (February 12, 1985); Amos v. Department of Health and Rehabilitative Services, 444 So.2d 43 (Fla.1983).

. Even Charter’s own expert, Howard Fagan, admitted on cross-examination that "good health planning" required consideration of access to health care facilities without reference to political or other artificial boundaries.

.Charter’s statutory limitations argument, based on Section 381.494(6)(c)2, is unpersuasive, since other statutorily-identified criteria implicitly allow HRS to "cross district lines” in weighing the appropriateness of a CON application. See Section 381.494(6)(c)l, 3, 5-7, 9-13, (d)l-5, Florida Statutes (1983).

. To the extent that North Ridge General Hospital v. NME Hospitals, Inc., d/b/a Delray Community Hospital and Florida Department of Health and Rehabilitative Services, 478 So.2d 1138 (Fla. 1st DCA 1985), reaches a different result on intervention based on economic interests, we note the fact appearing in the North Ridge record, but not apparent on the face of the opinion, that the attempted intervenor, North Ridge General Hospital, Inc., was not located in the same HRS health care service district as the recipient of the CON sought to be challenged in that case, and was thus not an "affected person” under Rule 10-5.02(20), Florida Administrative Code.