IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

THE PUBLIC HEALTH TRUST
OF MIAMI-DADE COUNTY,
FLORIDA d/b/a JACKSON
SOUTH COMMUNITY
HOSPITAL,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D16-3244

     Appellant,

v.

DEPARTMENT OF HEALTH,

     Appellee,

KENDALL HEALTHCARE
GROUP, LTD. d/b/a KENDALL
REGIONAL MEDICAL
CENTER,

     Appellee/Cross-Appellant,

_____/

Opinion filed December 6, 2017.

An appeal from an Order of the Department of Health.

Thomas F. Panza, Paul C. Buckley, and Brian S. Vidas of Panza, Maurer & Maynard, P.A., Fort Lauderdale, for Appellant.

Jay Patrick Reynolds, Chief Legal Counsel, and Sarah Young Hodges, Chief Appellate Counsel, Tallahassee, for Appellee Department of Health.

Stephen A. Ecenia, J. Stephen Menton, and Gabriel F. V. Warren of Rutledge Ecenia, P.A., Tallahassee, for Appellee/Cross-Appellant Kendall Healthcare Group, Ltd. d/b/a Kendall Regional Medical Center.

PER CURIAM.

The Public Health Trust of Miami-Dade County, Florida d/b/a Jackson South Community Hospital (Jackson South) appeals an order of the Department of Health (Department) dismissing as moot Jackson South's petition for a formal administrative hearing to contest the Department's decision to deny Jackson South's application to operate a provisional Level II trauma center after Jackson South was granted a provisional license in the following application cycle. Because we conclude that an actual case or controversy continues to exist with respect to Jackson South's first application, we reverse and remand for the Department to consider Jackson South's administrative challenge on the merits.

I.

We begin with a brief overview of the statutory and regulatory framework governing the trauma center application and selection process. The Florida Legislature has delegated the primary responsibility for the planning and establishment of a statewide inclusive trauma system to the Department. § 395.40(3), Fla. Stat. (2015). As part of this legislative mandate, the Department is charged with allocating, by rule, the number of trauma centers needed for each of the state's 19 trauma service areas (TSA), subject to the limitations that each TSA should have at

2

least one Level I or Level II trauma center and there may be no more than 44 trauma centers statewide. § 395.402(4)(a)-(c), Fla. Stat. (2015). Relevant to this appeal, TSA 19, which comprises Miami-Dade and Monroe counties, is permitted a maximum of three trauma centers. Fla. Admin. Code R. 64J-2.010(3).

*A. Application and Selection Process*

The trauma center application and selection process is a lengthy, multistage process that begins each year with the Department notifying acute care hospitals and trauma agencies that it is accepting letters of intent from those hospitals interested in becoming trauma centers. § 395.4025(2)(a), Fla. Stat. (2015). Letters of intent are due by October 1, and the Department thereafter distributes an application package to each hospital that timely submitted a letter of intent. § 395.4025(2)(a)-(b), Fla. Stat. (2015). The completed application is due by April 1 of the following year. § 395.4025(2)(c), Fla. Stat. (2015).

After the Department receives a trauma center application, it conducts a provisional review "for the purpose of determining that the hospital's application is complete and that the hospital has the critical elements required for a trauma center." *Id.* If the Department finds the hospital's application acceptable based on the provisional review, the hospital is "eligible to operate as a provisional trauma center." § 395.4025(3), Fla. Stat. (2015).

Between May 1 and October 1, the process entails an "in-depth evaluation" by the Department of all applications found acceptable in the provisional review. § 395.4025(4), Fla. Stat. (2015). And between October 1 and June 1, a review team of out-of-state experts assembled by the Department conducts onsite visits of all provisionally approved trauma centers. § 395.4025(5), Fla. Stat. (2015). Based on the recommendations from the review team, the Department selects verified trauma centers by July 1 of the second year following the filing of the letter of intent. § 395.4025(6), Fla. Stat. (2015). If the number of qualified provisional trauma centers exceeds the number of available slots for verified trauma centers in the applicable TSA, the Department applies a tiebreaking process developed by rule to make the final selection(s). Fla. Admin. Code R. 64J-2.016(11). Upon final verification, the trauma center is granted approval to operate for seven years, provided it continues to maintain trauma center standards and acceptable patient outcomes, and may thereafter apply for renewal. § 395.4025(6), Fla. Stat. (2015).

*B. Jackson South's Applications*

On or about April 1, 2015, Jackson South applied to operate a Level II trauma center in TSA 19 during the 2014-2016 application cycle (the "2015 Application"). Aventura Hospital & Medical Center (Aventura) also applied to operate a Level II trauma center in TSA 19 in the same application cycle. At that point in time, there were already two verified trauma centers in TSA 19, Ryder Trauma Center at

4

Jackson Memorial and Kendall Regional Medical Center (Kendall). As such, both Jackson South and Aventura were competing for the sole remaining trauma center slot in TSA 19.

After the required provisional review of the applications, the Department denied Jackson South's application, concluding that it "did not meet the standards of critical elements for provisional status." Aventura's application was accepted by the Department, and it was provisionally approved to operate a Level II trauma center in TSA 19.

Jackson South challenged the Department's decision denying its 2015 Application and a formal administrative hearing was conducted before the Division of Administrative Hearings. On February 29, 2016, Administrative Law Judge John G. Van Laningham entered an order rejecting the Department's decision and recommending that the Department enter a final order (1) deeming Jackson South's 2015 Application acceptable, (2) verifying that Jackson South was in substantial compliance with the requirements of section 395.4025, and (3) approving Jackson South to operate as a provisional Level II trauma center until the 2014-2016 application cycle concluded for TSA 19. The Department and the Intervenor, Kendall, filed exceptions to the recommended order.

In the interim, Jackson South filed a Level II trauma center application in the 2015-2017 application cycle (the "2016 Application"). After conducting the required

provisional review, the Department granted Jackson South provisional licensure and Jackson South began operating as a provisionally approved Level II trauma center.

Kendall then moved to dismiss Jackson South's pending administrative challenge, arguing that it is now moot since Jackson South obtained provisional approval to operate a Level II trauma center based upon its 2016 Application. The Department agreed. On July 7, 2016, the Department entered a final order dismissing Appellant's petition as moot, concluding that Jackson South "has been granted what it seeks, a license to operate a provisional level II trauma center."[1] This timely appeal followed.

## II.

Jackson South contends the Department committed reversible error in the final order below by not entering a substantive determination on the merits of Jackson South's petition challenging the denial of its 2015 Application. We review de novo the Department's decision dismissing Jackson South's administrative challenge as moot. *See Carlin v. State*, 939 So. 2d 245, 247 (Fla. 1st DCA 2006). "An issue is moot when the controversy has been so fully resolved that a judicial

---

[1] The Department also concluded that, although the tiebreaking procedure was not "an issue or controversy in this matter," the tiebreaking rule "does not indicate that trauma centers can only engage in head-to-head competition if provisional status was granted during the same application year." This conclusion of law is the basis of Kendall's cross-appeal. Because we reverse the final order in full, we do not reach the cross-appeal.

determination can have no actual effect." *Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992).

We initially address Kendall's argument that Jackson South abandoned its 2015 Application by filing the 2016 Application. Kendall contends the statutory and regulatory framework governing the trauma center application process does not allow a hospital to maintain overlapping trauma center applications before the Department. However, nothing in the applicable statutes or rules prohibits a hospital from participating in a subsequent application cycle while challenging the denial of a previous application. The statutory scheme provides several points of entry for a hospital to challenge an adverse decision made by the Department, including the decision to deny an applicant a provisional license. § 395.4025(7), Fla. Stat. ("Any hospital that wishes to protest a decision made by the department based on the department's preliminary or in-depth review of applications or on the recommendations of the site visit review team pursuant to this section shall proceed as provided in chapter 120."). Additionally, the Department's decision to deny an application for provisional status does not prevent that applicant from submitting another application in a future application cycle. *See* Fla. Admin. Code R. 64J-2.012(1)(g)2. ("The department shall inform each hospital whose provisional application it has denied of the remaining deficiencies in the application and shall inform the hospital that it may submit a letter of intent at the beginning of the next

approval cycle."). Had the Legislature or the Department intended to limit an applicant's right to pursue both of these avenues concurrently, the statute or rule would explicitly prohibit such action.

Turning to the Department's mootness determination, the fact that Jackson South was granted a provisional license to operate a Level II trauma center in TSA 19 based on its 2016 Application does not resolve the controversy that exists by virtue of the Department's denial of the 2015 Application. An actual controversy exists in the 2014-2016 application cycle because, with the denial of Jackson South's application, Jackson South will not be allowed to compete with Aventura for the final available trauma center slot in TSA 19. Had the Department agreed with Judge Van Laningham's recommendation to reverse the denial of Jackson South's application, Jackson South would have been given the opportunity to proceed through the rest of the application process, potentially triggering the tiebreaking mechanism if both hospitals were successful in completing the in-depth review and site survey stages. At that point, either Aventura or Jackson South–but clearly not both–would receive final verification to operate as a Level II trauma center for the seven-year approval period.

Due to the limitation on the number of trauma centers that can operate in TSA 19, Jackson South's current status as a provisional trauma center does not extinguish its rights under the 2015 Application. If Aventura is awarded the final remaining

8

trauma center slot in TSA 19, Jackson South's 2016 Application may ultimately be denied due to a lack of authorized need. Even if a hospital successfully completes the rigorous application process to become a verified trauma center, there still must be a need for a trauma center in the relevant TSA.[2] *See* § 395.4025(5), Fla. Stat. (providing that "hospitals being considered as provisional trauma centers shall meet all the requirements of a trauma center and *shall be located in a trauma service area that has a need for such a trauma center*") (emphasis added). Because Jackson South's 2016 Application was filed in a later application cycle than Aventura's, it is subject to the challenge that it was filed too late to compete with Aventura for the final slot in TSA 19. Indeed, neither the Department nor Kendall is willing to concede that Jackson South would be allowed to compete against Aventura for the final slot in TSA 19 under the 2016 Application. Thus, Jackson South's administrative challenge contesting the denial of its 2015 Application is not moot. *Cf. Charter Medical-Southeast, Inc. v. State, Dep't of Health & Rehabilitative Servs.*, 495 So. 2d 759 (Fla. 1st DCA 1986) (concluding that settlement agreement

---

[2] Kendall notes that the Department has proposed rules that would allow there to be more trauma centers in a given TSA than the Department's TSA allocation, provided the statutory cap of 44 trauma centers statewide has not been met. Under the new rules, Kendall contends that the number of trauma centers allocated to TSA 19 will no longer present an impediment to Jackson South receiving final approval of its 2016 Application, assuming Jackson South meets all of the substantive application requirements. We decline to address the extent to which the Department's proposed rules, which Kendall acknowledges have been administratively challenged, would impact the analysis of the issues in this case.

granting hospital a certificate of need to construct a psychiatric facility did not moot hospital's appeal of the agency's order denying the certificate of need because the settlement agreement was subject to challenges to which the application was not).

Accordingly, we reverse the Department's order and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

WETHERELL, RAY, and MAKAR, JJ., CONCUR.