# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2022-3148
_____

HOPE HOSPICE AND COMMUNITY
SERVICES, INC.,

    Appellant,

    v.

AGENCY FOR HEALTH CARE
ADMINISTRATION, and VITAS
HEALTHCARE CORPORATION OF
FLORIDA, INC.,

    Appellees.

_____

On appeal from the Agency for Health Care Administration.
Simone Marstiller, Secretary.

March 19, 2025

PER CURIAM.

VITAS Healthcare Corporation applied for and was granted a certificate of need ("CON") by the Agency for Health Care Administration ("AHCA") to operate a hospice program in Glades, Hendry, and Lee Counties. Hope Hospice and Community Services, Inc., the lone hospice provider in these counties for decades, challenges AHCA's CON approval and raises three issues on appeal. We affirm.

## I.

In 2021, VITAS filed a letter of intent and application to establish a new hospice program in Special Area 8C, consisting of Glades, Hendry, and Lee Counties, "under the Not Normal Circumstances provision set forth in Hospice Rule 5C-1.0355(4)(d)." The application asserted that Hope was not meeting the hospice needs of rural Glades and Hendry Counties and that VITAS would address the unequitable access to hospice services between the three counties in Service Area 8C.

AHCA preliminarily approved VITAS's application, finding that "special circumstances" existed in Special Area 8C to support approval under Rule 59C-1.0355(4)(d) of the Florida Administrative Code. Hope responded by filing a petition for a formal hearing, challenging the preliminary approval of a new hospice program. Before the Division of Administrative Hearings, Hope argued that VITAS's application failed to show need for a new hospice provider in Special Area 8C under either Rule 59C-1.0355(4)(a)'s "numeric need" standard, or (4)(d)'s "special circumstances" standard. But in August 2022, an administrative law judge ("ALJ") issued an order recommending approval of VITAS's CON application on the basis that patients in the two rural counties were underserved.

After Hope and AHCA filed exceptions to the Recommended Order, AHCA issued a Final Order granting VITAS's application. The Final Order revised one paragraph in the ALJ's Recommended Order, as requested by AHCA, to clearly attribute certain assertions in the order to Hope's legal position. Hope appealed the Final Order to this court.

## II.

Two standards of review are at play in this appeal. First, when a final order granting or denying a CON application is appealed, Florida law directs courts to "affirm the final order of the agency, unless the decision is arbitrary, capricious, or not in compliance with ss. 408.031-408.045." § 408.039(6)(b), Fla. Stat. Second, when interpreting state statutes or rules, we do "not defer to an

2

administrative agency's interpretation" but "interpret such statute or rule de novo." Art. V, § 21, Fla. Const.

## A.

AHCA has the responsibility of authorizing hospice programs in the State of Florida. AHCA approves CONs when a community need exists "for a new, converted, expanded, or otherwise significantly modified . . . hospice." § 408.034(1), Fla. Stat.; § 408.032(3), Fla. Stat.; *see also* § 408.043(1), Fla. Stat. (providing that "the need for [a] hospice shall be determined on the basis of the need for and availability of hospice services in the community"). The Legislature tasked AHCA with promulgating a community need methodology by rule, which "consider[s] the demographic characteristics of the population, the health status of the population, service use patterns, standards and trends, geographic accessibility, and market economics." § 408.034(3), Fla. Stat. The review criteria statute also provides ten criteria that AHCA must consider before issuing a CON:

(1) The need for the health care facilities being proposed.
(2) The availability, quality of care, accessibility, and extent of utilization of existing health care facilities in the service district of the applicant.
(3) The ability of the applicant to provide quality of care and the applicant's record of providing quality of care.
(4) The availability of resources, including health personnel, management personnel, and funds for capital and operating expenditures, for project accomplishment and operation.
(5) The extent to which the proposed services will enhance access to health care for residents of the service district.
(6) The immediate and long-term financial feasibility of the proposal.
(7) The extent to which the proposal will foster competition that promotes quality and cost-effectiveness.
(8) The costs and methods of the proposed construction, including the costs and methods of energy provision and

the availability of alternative, less costly, or more effective methods of construction.

(9) The applicant's past and proposed provision of health care services to Medicaid patients and the medically indigent.

(10) The applicant's designation as a Gold Seal Program nursing facility pursuant to s. 400.235, when the applicant is requesting additional nursing home beds at that facility.

§ 408.035, Fla. Stat.

AHCA, in turn, promulgated an administrative rule setting forth a CON approval formula for hospice programs. The rule allows for the approval of new hospice programs based on "numeric need." Fla. Admin. Code R. 59C-1.0355(4)(a). Numeric need is demonstrated "if the projected number of unserved patients who would elect a Hospice program is 350 or greater." *Id.* The rule also provides a "special circumstances" alternative of demonstrating need. *Id.* at (4)(d). Under this provision, CON applicants may justify the approval of a new hospice by documenting either: "1. That a specific terminally ill population is not being served[, or] 2. That a county or counties within the service area of a licensed Hospice program are not being served." *Id.*

AHCA's process for reviewing CON applications allows parties to obtain an administrative hearing after it conditionally grants or denies a CON application. *See* § 408.039(4)-(5), Fla. Stat. Judicial review is available in the wake of administrative proceedings pursuant to section 120.68, Florida Statutes. *Id.* (6)(a). Courts reviewing CON application decisions are directed to "affirm the final order of the agency, unless the decision is arbitrary, capricious, or not in compliance with ss. 408.031–408.045." *Id.* (6)(b).

## B.

Turning to this appeal, we first address Hope's argument that AHCA improperly permitted an amendment to VITAS's CON application. VITAS's application sought CON approval under the "Not Normal Circumstances provision set forth in Hospice Rule

4

5C-1.0355(4)(d)." Hope asserts that there's no "not normal circumstances" route to CON approval in (4)(d), but only a "special circumstances" standard, which is different. Thus, Hope argues that the ALJ allowed an impermissible amendment to the application by letting VITAS assert "special circumstances"-based arguments. *See* Fla. Admin. Code R. 59C-1.010(3)(b) (forbidding AHCA from accepting amendments or new information after the application is complete).

But we see no problem here. Although VITAS did not use the term "special circumstances" in its application, it sought CON approval expressly under Rule 59C-1.0355(4)(d), which is the "special circumstances" provision: "[VITAS] is applying for a [CON] under the Not Normal Circumstance set forth in Hospice Rule 59C-1.0355(4)(d), in order to address the unequitable access to hospice services between the three counties in Service Area 8C-Glades, Hendry, and Lee Counties, which results in a Not Normal Circumstance." Nobody appeared confused by the failure of VITAS's application to use the words "special circumstances." Indeed, Hope itself understood VITAS's application to be seeking special circumstances-based CON approval in its petition for formal hearing:

> 22. VITAS' CON Application argued that special circumstances warranted its approval. Many of the alleged special circumstances related to allegations that Hope is the sole hospice provided in Service Area and that the community and managed care providers require competition and choice. VITAS also alleged that certain populations were not being served. . . .

> 24. Despite the applicant's failure to demonstrate a specific terminally ill population not being served and the failure to demonstrate that Service Area 8C hospice appropriate residents are not being served, the Agency nevertheless preliminarily approved VITAS' CON Application.

The parties' Joint Pre-Hearing Stipulation likewise framed Hope's arguments not in terms of an application deficiency but by arguing that VITAS failed to meet Rule 59C-1.0355(4)(d)'s special

5

circumstances standard. With the parties teeing up the special circumstances issue for the ALJ and AHCA, there is hardly an issue with VITAS's CON application being approved on this basis. Under these circumstances, we see no confusion, error, or impermissible amendment problem with how AHCA and the ALJ interpreted VITAS's application.

Hope's next argument is that AHCA erred by basing VITAS's CON approval on the "underservice" of patients and counties in Special Area 8C, instead of on them "not being served." CON approval under Rule 59C-1.0355(4)(d) requires that applicants submit evidence documenting one of two things: "That a specific terminally ill population *is not being served* [or that] a county or counties within the service area of a licensed Hospice program *are not being served*." (emphases added). According to Hope, VITAS could only meet the rule's "not being served" standard by proving that *not a single person* within a terminally ill population or within a county or counties in the service area was being served. And that because Hope provides services to some terminally ill populations and to some patients in Glades and Hendry Counties, AHCA could not approve VITAS's application under Rule 59C-1.0355(4)(d).

But we don't agree with Hope's interpretation of "not being served." Of course, it's easy in the abstract to say that "not being served" and "underserved" are different concepts and should be distinguished here. But the "not being served" language in Rule 59C-1.0355(4)(d) wasn't promulgated in a vacuum. It is part of a broader statutory and administrative regime regulating the provision of hospice programs. This regime states a clear purpose of having CON applications approved where there are unmet needs for hospice services in a community. *See, e.g.*, § 408.043(1), Fla. Stat. ("When an application is made for a certificate of need to establish or to expand a hospice, the need for such hospice shall be determined on the basis of *the need for and availability of hospice services in the community*." (emphasis added)); § 408.034(3), Fla. Stat. (requiring the agency to make rules establishing "uniform need methodologies . . . consider[ing] the . . . health status of the population, service use patterns, standards and trends, geographic accessibility, and market economics"); Fla. Admin. Code R. 59C-1.0355(1) (expressing the "intent of the Agency to ensure the availability of Hospice programs as defined in this rule *to all*

*persons requesting and eligible for Hospice services*, regardless of ability to pay" (emphasis added)). This legal context makes it near impossible to interpret the "not being served" language in Rule 59C-1.0355(4)(d) in accord with Hope's not-being-served-*at-all*-type position. Hope's argument that populations and counties must be considered "served" so long as one (or some) terminally ill patients or persons in a county receive services, and without regard to subsets of patients being left out, conflicts with the directives set forth in the hospice scheme. It also conflicts with a common-sense understanding of what it means to provide services to a given population or to a geographic area. *See Furst v. Defrances*, 332 So. 3d 951, 954 (Fla. 2021) ("Under basic principles of statutory interpretation, our task is to discern the text's meaning as it would have been understood by a reasonable reader, fully competent in the language, at the time of its enactment."). An ordinary reader would understand that a population of patients or county cannot be considered "served" if a provider provides care to only part of the group.

In sum, we agree with AHCA's interpretation of Rule 59C-1.0355(4)(d) that "not being served" sets forth more of a full-service requirement. That is, where existing service providers are failing to serve the needs of a subset of terminally ill patients or of geographic parts of a service area, AHCA has authority to approve special circumstances-based CON applications under Rule 59C-1.0355(4)(d). Accordingly, here, because VITAS's case and the final order's findings identified gaps in the hospice services available to terminally ill populations and in rural areas of Glades and Hendry Counties, AHCA could rightfully find special circumstances because these populations and counties were "not being served."

With respect to the final hearing evidence here, AHCA's decision is not arbitrary, capricious, or out of compliance with the requirements of chapter 408, Florida Statutes. § 408.039(6)(b), Fla. Stat. We have noted before that "AHCA has much play-in-the-joint in making a determination as to whether to allow a new entrant into a hospice service district" and that "the 'appropriate weight' to be assigned to each statutory criterion has no fixed value and 'must vary on a case-by-case basis, depending upon the facts of each case.'" *Compassionate Care Hospice of Gulf Coast, Inc. v. State*, 247 So. 3d 99, 101 (Fla. 1st DCA 2018) (quoting *Collier Med.*

*Ctr., Inc. v. State, Dep't of Health & Rehab. Servs.*, 462 So. 2d 83, 84 (Fla. 1st DCA 1985)); *see also N. Ridge Gen. Hosp., Inc. v. NME Hosps., Inc.*, 478 So. 2d 1138, 1139 (Fla. 1st DCA 1985) ("[T]he legislative purpose behind the certificate of need law is to provide for a balanced consideration of all relevant criteria."). "So long as a 'balanced consideration of all relevant criteria' was performed, and some reasonable explanation exists for the final outcome, . . . an appellate court should defer to the result, absent some abdication by the agency of its responsibilities." *Compassionate Care*, 247 So. 3d at 101. We affirm here because VITAS carried its burden of showing special circumstances with the evidence it presented at the final administrative hearing.

Finally, Hope asserts that AHCA's attempt to clarify the ALJ's finding of fact in paragraph 94 of the Recommended Order was error requiring that we set aside the Final Order. But we agree with VITAS that AHCA's revision to this paragraph, contained within a section of the order addressing "Hope's Opposition . . .," is not reversible error and made no substantive difference in the special circumstances analysis or to the decision to grant VITAS's CON application. For purposes of section 408.039(6)(b), Florida Statutes, AHCA's action was not arbitrary, capricious, or in violation of the applicable provisions of chapter 408. *Cf.* § 120.68(7)(c), Fla. Stat. ("The court shall remand a case to the agency for further proceedings . . . when it finds that: . . . [t]he fairness of the proceedings or the correctness of the action may have been impaired by a *material error* in procedure or a failure to follow prescribed procedure[.]" (emphasis added)); § 120.68(8), Fla. Stat. (requiring affirmance unless the court finds grounds for granting relief); *see also Peoples Bank of Indian River Cnty. v. State, Dep't of Banking & Fin.*, 395 So. 2d 521, 524 (Fla. 1981) (citing section 120.68(8), Florida Statutes (current section 120.68(7)(c), Florida Statutes) and affirming where the agency's error was not prejudicial).

AFFIRMED.

OSTERHAUS, C.J., and LEWIS and TANENBAUM, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


George T. Levesque and D. Ty Jackson of Gray Robinson, P.A., Tallahassee, for Appellant.

Julia E. Smith, Tallahassee, for Appellee Agency for Health Care Administration.

Stephen A. Ecenia and Amanda M. Hessein of Rutledge Ecenia, Tallahassee, for Appellee VITAS Healthcare Corporation of Florida, Inc.